**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

———

BOBBY D. GALLEGOS,

    Plaintiff,

v.                                                                       No. CIV-O3-384 BB/KBM

THOMAS E. WHITE, SECRETARY
OF THE ARMY, AGENCY

    Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court for consideration of Plaintiff's Motion to Reverse Initial Decision of the Merit Systems Protection Board, filed March 15, 2004. ("Motion," Doc. 32.) The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Plaintiff's motion should be DENIED.

**I. BACKGROUND**

This case arises from a February 19, 2003 decision entered by the Merit Systems Protection Board (MSPB), Denver Field Office, affirming the Department of the Army's (the "Army's") action removing Plaintiff for performance-based reasons. *Gallegos v. Dep't of the Army*, MSPB Docket No. DE-0432-02-0202-I-1. Appeal of MSPB decisions is generally conducted by the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9). However, the district courts have jurisdiction where, as here, there is an appeal of unfavorable personnel action mixed in with a claim of unlawful discrimination. 5 U.S.C. § 7703(b)(2); *Coffman v. Glickman*, 328 F.3d 619, 625 (10th Cir. 2003) .

Plaintiff, Bobby D. Gallegos, was employed at White Sands Missile Range in various engineering capacities since 1985. (First Amended Complaint ¶ 14.) In 1994, Jeffrey Dallman, Supervisory General Engineer, became Plaintiff's immediate supervisor. (Motion at 2.)

Mr. Dallman placed Plaintiff on a Performance Improvement Plan (PIP) which he successfully completed in the year 2000. (Motion at 3.) However, on June 20, 2001, Mr. Dallman placed Plaintiff on another PIP and issued him a Warning of Unsatisfactory Performance. (PIP, Ag. Ex. 4B1.) The second PIP reiterated Objective Five and the Technical Competence Standard under which Plaintiff had been working, and delineated three tasks related to a Blockhouse study which Plaintiff had been working on since April 2000.[1]

---

[1] <u>Objective #5</u>: "Test fixture/shroud designs, test equipment/facility modification, and instrumentation or other test material procurements are engineered to be cost effective, meet test requirements, and provide maximum cross-project utilization."
You are failing this objective which is rated using the "Technical Competence" standard. The "Technical Competence" standard states, "Exhibits technical knowledge, skills and abilities to get desired results within established timeframes and with the appropriate level of supervision. Sets and meets realistic milestones. Establishes priorities that reflect mission and organizational needs. Plans so that adequate resources are available. Makes prompt and sound decisions. ..." In order for you to be successful in this objective I have determined new suspense dates and additional project requirements as follows:
    (a) Re-calculation and Final Report for the 300K Blockhouse Pressure Study using an 8000 lb. explosive - due July 16 01;
    (b) Re-calculation and Final Report for the 300K Blockhouse Pressure Study using a 7000 lb. explosive - due July Jun 01 [sic];
    (c) Calculation and final report of the depth of fragment penetration for a Class 1,2, 7000 lb. explosive at the 300K Blockhouse - due 21 September.
...I expect you to complete these tasks within the established timeframes and to be of acceptable quality, that is, well written, accurate, with few technical or editorial errors....Failure to satisfactorily complete these tasks may result in a failure rating for this objective.
(PIP, Ag.Ex. 4B1 at 5,6.)

Plaintiff submitted three drafts of the first Blockhouse study, none satisfactory. (MSPB Opinion at 9-11.)[2] The first was submitted on August 29, 2001 and contained numerous errors.[3]

On September 24, 2001, Mr. Dallman reminded Plaintiff that his priority was the 300K Blockhouse Pressure Study and that he should focus on that over his procurement duties. (*Id.* at 9.) On September 27, 2001, Plaintiff submitted a second draft. (*Id.* at 10.) Again, it contained numerous errors. Mr. Dallman re-wrote the discussion portion of the report for Plaintiff. (*Id.*) He found that Plaintiff had made several technical errors such as miscalculating the cube root of 9600 and using erroneous dimensions of the Blockhouse building. (*Id.*) Mr. Dallman again instructed Plaintiff that the report had to define his sources and values. (*Id.*)

On October 22, 2001, Plaintiff submitted a third version of the study that still contained significant errors. (*Id.* at 11.) The Blockhouse dimensions were wrong; Plaintiff had reversed the actual length and width of the building in his diagram. (*Id.* at 11.) There were errors in the calculated values and typographical errors. (*Id.*) As a result of these errors, the remaining reports were assigned to another GS-12 engineer, Mark Horst, who produced a significantly better report within a few weeks of the initial assignment. (*Id.*)

---

[2] The parties provided the Court with a transcript from the MSPB but did not file copies of the Blockhouse studies for the court's review. Plaintiff has conceded that the reports contained errors (Motion at 4). As neither the fact nor the nature of the errors has been disputed by the parties, the Court has relied on the MSPB Opinion in its description of the errors.

[3] The most significant errors may be summarized as follows: (1) Plaintiff had been instructed to use the interior wall for his calculations in December 2000; instead he used the front and back wall. Plaintiff was again instructed to use the interior wall in his calculations. (MSPB Opinion at 9); (2) The report was written in an informal manner and was not suitable for submission to the Department of Defense Explosive Safety Board (DDESB); Plaintiff was instructed to make the report more formal, delete references to his supervisors, label his figures, number his pages, include figures from the TM5-1300 manual and reference that manual, and use the spell checker. (*Id.*); (3) At least two numerical values were incorrect. (*Id.*)

On December 12, 2001, Mr. Dallman proposed removing Plaintiff for unacceptable performance. (Proposed Removal Memorandum, Ag. Ex. 4Q.) In his memo, he concluded that Plaintiff failed the Technical Competence standard with regard to Objective Five because he failed to satisfactorily complete the Blockhouse studies required by his PIP. (*Id.* at 2b, c, d.) He also commented in that memo that Plaintiff had been denied a within grade pay increase earlier in the year (*id.* at 2a), failed an Objective that was not part of a PIP (*id.* at 2e) and needed improvement in two other objectives. (*Id.* at 2f.)

On February 27, 2002, John W. Jensen, Director, Systems Test and Assessment Directorate, rendered his decision to remove Plaintiff from federal service for unacceptable performance, stating that he based his decision on "paragraphs 2a through 2f " of Mr. Dallman's Proposed Removal Memorandum as well as a conversation with Plaintiff's attorney, Mr. Roy R. Brandys on February 13, 2002. (Decision on Proposed Removal, Ag. Ex. 4B.)

Plaintiff timely appealed the removal decision to the MSPB. (MSPB Opinion at 1.) The Board affirmed the decision on February 19, 2003. (*Id.*) That decision became final on March 26, 2003 (*Id.* at 29) and on the same day Plaintiff filed his complaint presently before the Court. (Doc. 1.)

Plaintiff argues that MSPB erred in several respects: (1) failing to require the Army to follow the procedures required by the Total Army Performance Evaluation System (TAPES) and that this failure deprived Plaintiff of adequate notice (Motion at 6); (2) permitting the Army to utilize objectives that were vague and insufficiently objective, contrary to 5 U.S.C. § 4302 (Motion at 10-11); (3) denial of a reasonable opportunity to improve (Motion at 15); (4) harmful error (Motion at 16); and (5) depriving Plaintiff of due process (Motion at 16).

4

## II.  STANDARD OF REVIEW

Plaintiff may bring the entire mixed case before this Court which will review the discrimination claim de novo but strictly on the record for the present nondiscrimination claim. *Hayes v. U.S. Gov't Printing Office*, 684 F.2d 137, 141 (D.C. Cir. 1982).  The Court will uphold the MSPB personnel action against nondiscrimination challenges if the decision complies with the law and has a rational basis supported by substantial evidence from the record taken as a whole. *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984).  Under a substantial evidence review, the court considers both the evidence that supports the Board's decision as well as the evidence against it.  *Heelen v. Dep't of Commerce*, 154 F.3d 1306, 1309 (Fed. Cir. 1998). A court considering an appeal of a decision by the MSPB may not substitute its judgment for that of the MSPB.  *Williams*, 983 F.2d 177, 180 (10th Cir. 1993).  Indeed, this Court may only reverse MSPB decisions of non-discrimination claims if the decision is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;  (2) obtained without procedures required by law, rule, or regulation having been followed;  or  (3) unsupported by substantial evidence.  5 U.S.C. § 7703(c); *see Williams v. Rice*, 983 F.2d at 180. Review of an MSPB removal decision is limited to the administrative record.  5 U.S.C. 7703(c); *Williams*, 983 F.2d at 179-180.

## III.  DISCUSSION

<u>1) Did irregularities in the Army's application of its performance system (TAPES) result in inadequate notice to Plaintiff of the requirements of his position?</u>

Every federal agency must have a performance evaluation system that sets performance standards with objective criteria "to the maximum extent feasible."  5 U.S.C. § 4302(b). The Army satisfies this requirement with the Total Army Performance Evaluation System (TAPES).

5

(Ag. Ex.1.) TAPES permits generic "performance standards" and explains that those standards are supplemented with the Position Description and mission related expectations provided to an employee during counseling or objective setting sessions. (TAPES at 3, 58, Ag. Ex.1.) If an employee is not meeting expectations and is placed on a formal Performance Improvement Plan (PIP), TAPES provides that a supervisor "may need to supplement the TAPES documentation." (*Id.* at 58.) "Supplementation" may include greater detail, more specificity, or more frequent documented counseling. (*Id.* at 59.) Supplementation serves to inform the employee what is required to perform successfully. (*Id.* at 58.)

Here, Plaintiff refers to the Blockhouse studies as a "phantom" objective and asserts that the failure to enumerate the studies as a "critical element" in his TAPES documentation led to "doubt, uncertainty and confusion." (Motion at 9.) Plaintiff argues that if the Army had wanted to include the Blockhouse studies as a "critical element," it should have added it to Plaintiff's 7222-1 form so that Plaintiff would clearly know that the studies must be done in order to retain his position.

Yet, Plaintiff conceded at the MSPB that he knew the Blockhouse studies were required and that if he did not complete them he could be removed. (Gallegos Testimony, MSPB Transcript, Vol. II at 40.) He further testified that, during the PIP, he could not sleep due to his understanding that he had to get the studies done. (*Id.*) The MSPB found that Plaintiff was properly made aware of both the objective and the standard and that the lack of specificity in the agency's standards and objectives was cured during the course of the PIP. (MSPB Opinion at 19.)

This holding is legally supportable. Agencies frequently use broad, non-specific objectives. *Greer v. Dep't of the Army*, 79 M.S.P.R. 477, 481 (1998) ("Prepare written plans for

6

proposed work and document results of research efforts through both oral and written presentations"); *Thompson v. Dep't of the Navy*, 89 M.S.P.R. 188, 191 (2001) ("organizational support and communication" and "execution of duties").  Agencies may supplement non-specific objectives by informing an employee of work requirements through written instructions or memos that identify deficiencies. *Baker v. Defense Logistics Agency*, 25 M.S.P.R. 614, 617 (1985) *aff'd* 782 F.2d 1579 (Fed. Cir. 1986). The MSPB finding is also supported by substantial evidence and Plaintiff's allegation of inadequate notice fails.

2) Were Plaintiff's performance objectives too vague to satisfy 5 U.S.C. § 4302(b)(1)?

The essential rule is that federal employment should be operated under merit system principles and employees who cannot or will not improve their performance to meet required standards should be removed. 5 U.S.C. § 2301(b)(6).  Merit system principles must be adhered to by all agencies in performance based actions.  *Lovshin v. Dep't of the Navy*, 767 F.2d 826, 840 (Fed. Cir. 1985) (en banc). An agency may satisfy § 4302's requirement for objective criteria by communication in "any manner calculated to apprise the employee of the requirements against which she is to be measured." *Melnick v. Dep't of Housing & Urban Development*, 42 M.S.P.R. 93, 99 (1989), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (unpublished).

Objective Five, which the Army relied upon in removing Plaintiff for noncompliance, provides *inter alia*: "Test fixture/shroud designs, test equipment/facility modifications, and instrumentation or other test material procurements are engineered to be cost effective, meet test requirements, and provide maximum cross-project utilization."  (PIP at 5, Ag. Ex. 4B1.) The Blockhouse studies related to whether facility modification was necessary; as such the studies

were assigned to Plaintiff as part of Objective Five.  (Dallman Testimony, MSPB Transcript, Vol. I at 41.)

If the Army had merely repeated Objective Five in the PIP without further elaboration, Plaintiff would not have been properly removed because, as the MSPB found, it is too vague. However, the Army did much more.  In the PIP, the Army listed three different Blockhouse studies, provided sequential deadlines, and clarified what successful performance would be:

> (a) Re-calculation and Final Report for the 300K Blockhouse Pressure Study using an 8000 lb. explosive - due July 16 01;
> (b) Re-calculation and Final Report for the 300K Blockhouse Pressure Study using a 7000 lb. explosive - due July Jun 01 [sic];
> (c) Calculation and final report of the depth of fragment penetration for a Class 1,2, 7000 lb. explosive at the 300K Blockhouse - due 21 September.
>
> ...I expect you to complete these tasks within the established timeframes and to be of acceptable quality, that is, well written, accurate, with few technical or editorial errors....Failure to satisfactorily complete these tasks may result in a failure rating for this objective.
>
> (PIP at 6, Ag. Ex. 4B1.)

The reasonableness of performance standards is case-specific.  *Compare Guillebeau,* 362 F.3d 1329, 1337 (Fed. Cir. 2004) (citing *Wilson v. Dep't of Health and Human Services*, 770 F.2d 1048, 1052 (Fed. Cir. 1985)), with *Jackson v. Dep't of Veterans Affairs*, 97 M.S.P.R. 13, 19 (2004), and *Eibel v. Dep't of the Navy*, 857 F.2d F.2d 1439, 1444 (Fed. Cir. 1988). However, even inadequate standards may still support removal if the inadequacy is cured through a PIP in which the employee is informed of what he must to do succeed.  *Thompson v. Dep't of the Navy*, 89 M.S.P.R. 188, 195 (2001), *aff'd*, 84 Fed. Appx. 61 (Fed. Cir. 2003) (unpublished opinion).  In *Thompson*, the court upheld an engineer's removal, even though the objectives for his position required nothing more than "organizational support and communication" and "execution of

duties." *Id.* at 196. A subsequent PIP provided additional detail (e.g., successful "execution of duties" required that he could not have more than three instances in which the quality, timeliness or responsiveness of his work was unacceptable.) *Id.*  The Board upheld the removal, noting that even fatally defective standards could be cured by a PIP. *Id.* at 195.  The Board also pointed out that evaluating a professional position like that of an engineer would necessarily be more subjective and require more judgment than lower level positions. *Id.* at 193.  Thus, if an adequate PIP is used, even backwards standards like those disapproved in *Wilson* and *Eibel* can be used to remove an employee. *Sesko v. Dep't of the Navy*, 878 F.2d 1444 (1989) (unpublished opinion) (distinguishing *Eibel* because that employee had not benefitted from a specific PIP as Sesko had).

In this case, the MSPB correctly upheld Plaintiff's removal despite its finding that the standards and objectives were too generic and lacked specificity.  (MSPB Opinion at 17.) MSPB reasoned  that the Army properly cured that defect through a specific PIP and assistance provided to Plaintiff.  MSPB Opinion at 17-18 (citing *Mouser v. Dep't of Health & Human Services*, 32 M.S.P.R. 543, 547 (1987).)

Much like the engineer in *Thompson*, then, Plaintiff received a PIP that clarified the vagueness of his performance standard.  89 M.S.P.R. at 195. Indeed, the vague standards and objectives here were reasonably applied given the PIP. *Guillebeau*. 362 F.3d at 1337.  And the Defendant communicated in a manner "calculated to apprise the employee" of the requirements. *Melnick*, 42 M.S.P.R. at 99.  The MSPB acted lawfully in concluding that Plaintiff could be removed under inadequate standards supplemented by a PIP.

3) Did the "changing" requirements of the Blockhouse study deny Plaintiff an opportunity to improve?

9

Even with the best performance standards, an agency cannot terminate an employee without first giving him a reasonable opportunity to improve.  5 U.S.C. § 4302(b)(6); *Lovshin*, 767 F.2d at 834.  Relevant factors in assessing the reasonableness of an opportunity to improve include the nature, duties and responsibilities of the position, the alleged deficiencies, and the amount of time needed to demonstrate acceptable performance.  *Macijauskas v. Dep't of the Army*, 34 M.S.P.R. 564, 566 (1987).  An agency must offer "assistance" and the assistance must not be illusory.  5 C.F.R. § 432.104; *Adorador v. Dep't of the Air Force*, 38 M.S.P.R. 461, 465 (1988) (holding that supervisor who assured employee of her assistance but withheld assistance and told others he "should be gotten rid of" had not provided adequate assistance.)

For example, a letter explaining the unacceptable performance, followed by a ninety-day period in which the agency provides supervision and guidance is sufficient and an agency need not provide training.  *Alexander v. Dep't of Commerce*, 30 M.S.P.R. 243, 248 (1986), *overruled on other grounds by Jackson v. Dep't of Veterans Affairs*, 97 M.S.P.R. 13 (2004); *see also*, *Macijauskas*, 34 M.S.P.R. at 569.

Here, Plaintiff argues that his supervisor changed the requirements of the Blockhouse study, making it a "moving target" and causing him to be unsure of what was required and denying him a reasonable opportunity to improve.  (Motion at 14-15.)  The MSPB considered this argument but found that Mr. Dallman informed Plaintiff about the study's requirements in writing through the PIP. (MSPB Opinion at 18.) Plaintiff testified at the MSPB that he received the PIP and understood that he could be terminated for not completing it.  (Gallegos Testimony, MSPB Transcript Vol. II at 38-39.)  The PIP set out the three different iterations required for the Blockhouse study; it was not a moving target.  (PIP at 6, Ag. Ex. 4B1.)

10

Not only were the Blockhouse study requirements clear, they were within the abilities of a GS-12 engineer. Plaintiff argues that the task was more suited to someone with better qualifications. (Motion at 14.) However, both Mr. Dallman and Mr. Garay testified that the Blockhouse studies required only algebra and were within the abilities of a GS-12 engineer. (Dallman Testimony, MSPB Transcript Vol. I at 17 and Garay Testimony, MSPB Transcipt at 157.) Another GS-12 engineer, Mr. Horst, testified that he was assigned one of the Blockhouse studies at the beginning of October 2001, that he completed it by mid-November, that he had never done a study like that before, and that it was within the capabilities of a GS-12 engineer. (Horst Testimony, MSPB Transcript Vol. I at 183-186.) There was therefore substantial evidence in favor of the MSPB's finding that the Blockhouse studies were within the abilities of a GS-12 engineer.

Having concluded that the study requirements were clear and that the task was within the abilities of a GS-12 engineer, the MSPB analyzed whether Plaintiff had a reasonable opportunity to improve. (MSPB Opinion at 19.) Although Plaintiff testified that he did not receive assistance, (Gallegos Testimony, MSPB Transcript, Vol. II at 51), Mr. Dallman testified that he counseled Plaintiff about the objectives he was failing on May 23, 2001 and that he subsequently placed him on a ninety day PIP. (MSPB Transcript, Vol. I at 10.) He told Plaintiff that he was available for consultation about his work. (*Id.* at 12.) Mr. Garay, Plaintiff's second line supervisor testified that he gave him a better graph to use on the project. (MSPB Transcript, Vol. I at 145.) Furthermore, Plaintiff received written feedback after his completion of the first draft of the Blockhouse study (MSPB Opinion at 9) and more feedback and counseling after he completed the second draft (*Id.* at 10.)

11

Thus, the Army provided Plaintiff with a specific PIP, assistance, and supervision and guidance over the ninety day period of the PIP. *Alexander*, 33 M.S.P.R. at 248. The MSPB evaluated the nature of the position, the deficiencies in Plaintiff's work and the time required to demonstrate acceptable performance. *Macijauskas,* 34 M.S.P.R. at 566. Thus, the MSPB's conclusion that this was a reasonable opportunity to improve was in accordance with law.

4)  Was it harmful error when the decision maker relied on extraneous negative information in the Proposed Removal Memorandum instead of simply the Objective listed in the PIP that Plaintiff actually failed?

Plaintiff argues that the Board must reverse an agency decision that is the result of harmful error and that the Army committed harmful error by relying on mistakes he made outside of the PIP to remove him. 5 U.S.C. § 7701(c)(2)(A).[4] The burden is on the employee to show that the error caused substantial harm or prejudice to his rights. 5 C.F.R. § 1201.56(a)(2)(iii) and (c)(3).

An agency may not terminate an employee if the PIP is satisfactorily performed, despite infractions committed prior to the PIP. *Brown v. Veterans Admin.*, 44 M.S.P.R. 635, 642 (1990). However, if performance under a PIP is unacceptable and the agency seeks to remove an employee, the agency may also rely on instances of unacceptable performance prior to the PIP if they occurred within the year preceding the proposed action. *Id.*; *Martin v. F.A.A.*, 795 F.2d 995, 998 (Fed. Cir. 1996); 5 U.S.C. § 4303(c)(2)(A) (permitting removal based on instances of unacceptable performance which occurred during the one-year period ending on the date of the proposed removal).

---

[4]Harmful error is error that might have resulted in a different decision than would have been made absent the error. 5 C.F.R. § 1201.56 (c)(3); *Stephen v. Dep't of Air Force*, 47 M.S.P.R. 672, 681 (1991).

An agency is required to communicate performance standards and critical elements (or objectives) in writing to an employee at the beginning of a performance period. *Lovshin v. Dep't of the Navy*, 767 F.2d 826, 834 (Fed. Cir. 1985). To remove an employee, the agency must also warn of inadequacies in objectives during the appraisal period, counsel the employee and give the employee an opportunity to improve. *Id.* If an employee receives an "unacceptable" rating on even one objective, the agency may terminate an employee. *Id.*

Plaintiff conceded (Gallegos Testimony, MSPB Transcript, Vol. II at 47) and the MSPB found (MSPB Opinion at 21) that even by the third revision, Plaintiff's reports continued to contain repeated errors. The MSPB found that Plaintiff failed to properly complete the three studies in Objective Five that Mr. Dallman assigned him in his PIP. (MSPB Opinion at 19-21.) That finding is supported by substantial evidence.

In this case, the removing officer, Mr. Jensen, stated that he relied on "paragraphs 2a through 2f" of Mr. Dallman's removal memorandum. Only 2b, c and d related to Objective Five, which was in the PIP, which Plaintiff failed and for which he could be properly terminated. *Lovshin*, 767 F.2d at 834. Item 2e referred to Objective Six which Plaintiff failed but which was not part of the PIP. Had Plaintiff only failed Objective Six, that would not have permitted removal since it was not part of his PIP and he had not received notice about the deficiency or opportunity to improve. *Id.* However, under *Brown*, his failure on Objective Six could be considered in concert with the failed Objective Five as additional justification for removal. 44 M.S.P.R. at 642.

That leaves Items 2a and 2f. Item 2a described the fact that Plaintiff had not received a within grade increase earlier in the year because he had been rated only "Fair." Item 2f stated that Plaintiff's "Working Relationships" (Objective Two) and "Written Communications" (Objective

13

Three) both needed improvement. Because Plaintiff's performance in these Objectives was acceptable (although marginally so), neither of these Objectives were suitable for consideration in a removal memorandum. 5 U.S.C. § 4303(c)(2)(A) (permitting removal only for instances of unacceptable performance in the prior year).

Plaintiff argues that Mr. Jensen's consideration of this material was harmful error and the Court should reverse the MSPB; this would be futile. Mr. Jensen could lawfully write a Removal Memorandum, relying only on Plaintiff's failure to complete the Blockhouse studies under Objective Five and his unacceptable performance on Objective Six. Because failing even one objective is sufficient to justify removal, any error is clearly harmless. *Lovshin*, 767 F.2d at 834.

5) When Defendant relied on extraneous negative information to justify Plaintiff's removal, did it deprive Plaintiff of due process?

It is a fundamental element of due process to have an opportunity to present reasons, either in person or in writing, why the proposed action to remove the employee should not be taken. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). But all that is required is notice and an opportunity to reply. *Id.* Flawless procedure is not required. *Darnell v. Dep't of Transp., F.A.A.*, 807 F.2d 943, 945 (Fed. Cir. 1986) (holding that an opportunity to respond after the decision was made was adequate due process). Nonprejudicial procedural mistakes will not justify reversing an agency's removal decision. *Cornelius v. Nutt,* 472 U.S. 648, 663 (1985).

An agency must provide sufficient specificity to give the employee a meaningful opportunity to respond to its allegations. *Mason v. Dep't of the Navy*, 70 M.S.P.R. 584, 586 (1996). In *Mason*, the Board reversed a Navy employee's suspension for using racial slurs. *Id.* at 587. Because the notice only made general allegations, the Board remanded the case to the

14

agency so that the Navy could inform the employee when and where he allegedly used the slurs and give the employee a fair opportunity to rebut the charges. *Id.* at 589.

In this case, Plaintiff received a Memo of Proposed Removal (Ag. Ex. 4Q) that explained the specific Objective that Plaintiff failed. Unlike *Mason*, who had only vague allegations of using racial slurs, here there was no lack of specificity and Plaintiff had an adequate opportunity to respond. Although it is correct that Mr. Jensen also referred to Objectives 2a and 2f, that did not prevent Plaintiff from having an adequate opportunity to respond to the ultimate basis for his removal. In fact, he did respond and he had a hearing with the MSPB. At that hearing, Plaintiff raised many of the issues he has raised here--vague performance standards/objectives, insufficient opportunity to improve, harmful procedural error, discrimination and retaliation. There was thus no denial of due process because of Mr. Jensen's reference to the removal as based on "paragraphs 2a through 2f" of Mr. Dallman's Proposed Removal Memo.

## IV. CONCLUSION

The decision of the MSPB was not arbitrary and capricious; it was in compliance with the law. It was based upon substantial evidence. The Court finds that the motion should be DENIED.

## V. ORDER

**IT IS ORDERED** that Defendants' Motion to reverse the initial decision of the Merit Systems Protection Board be DENIED.

**DATED** at Albuquerque this 6th day of October, 2004.

_____
BRUCE D. BLACK
United States District Judge

15

**Attorneys:**

For Plaintiff:

> Roy R. Brandys
> Childress & Zdeb, Ltd.
> 515 N. State St., Suite 2200
> Chicago, IL  60610

For Defendants:

> Michael H. Hoses
> Assistant U.S. Attorney
> P.O. Box 607
> Albuquerque, NM  87103