## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

BOBBY D. GALLEGOS,

       Plaintiff,

v.                                          No. CIV-O3-384 BB/KBM

LES BROWNLEE,
ACTING SECRETARY
OF THE ARMY

       Defendant.

### MEMORANDUM OPINION AND ORDER

     This matter comes before the Court for consideration of Defendant's Motion for Summary Judgment filed September 15, 2004. ("Motion," Doc. 43.)  The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendant's Motion should be DENIED.

## I.  BACKGROUND

     This case arises from a February 19, 2003 decision entered by the Merit Systems Protection Board (MSPB), Denver Field Office, affirming the Department of the Army's (the "Army's") action removing Plaintiff for performance-based reasons.  Gallegos v. Dep't of the Army, MSPB Docket No. DE-0432-02-0202-I-1.  Appeal of MSPB decisions is generally conducted by the United States Court of Appeals for the Federal Circuit.  5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9).  However, the district courts have jurisdiction where, as here, there is an appeal of unfavorable personnel action mixed in with a claim of unlawful discrimination.  5 U.S.C. § 7703(b)(2); Coffman v. Glickman, 328 F.3d 619, 625 (10th Cir. 2003).

Plaintiff, Bobby D. Gallegos, is a male of Hispanic origin who was employed at White Sands Missile Range in various engineering capacities since 1985. (Undisp. Fact II.A.1.) In 1990 he was promoted (Pltf. Ex. 2, Gallegos Aff.) and in 1994 he received a Special Act Award for providing outstanding support on a project.  (Pltf. Ex. 3, Gallegos Performance Appraisals.)  He received letters of appreciation from employees who worked with him on testing assignments. (Id., see, e.g., Hays Letter (noting professional competence, dedication and teamwork); and, Cooper Letter (noting excellent support, outstanding job and significant contributions).)  Until 1994, Plaintiff performed satisfactory work with no disciplinary issues.  (Pltf. Ex. 2, Gallegos Aff.)

In 1994, Jeffrey Dallman, Supervisory General Engineer, became Plaintiff's immediate supervisor.  (Undisp. Fact II.A.5.)  Within two years, Plaintiff began filing complaints alleging that he was being treated in a discriminatory and retaliatory manner.  (Pltf. Ex. 17, EEO Activity.) Those complaints included, inter alia, denial of overtime (1996), denial of training (1996), decreased personnel ratings (1997, 1998, 1999, 2000), and suspensions (1998, 2000, 2001).  (Id.) In 2001, Dallman proposed Plaintiff's termination for allegedly unacceptable performance. (Undisp. Fact II.D.9.) Plaintiff argues that he was terminated due to discrimination and retaliation. The facts leading to Plaintiff's termination are disputed.

Defendant's version of events shows that Plaintiff was assigned certain studies (the "Blockhouse Studies") as part of his annual review in December 2000. (Undisp. Fact II.D.3.) In May 2001, Dallman instructed Plaintiff about additional studies on the Blockhouse.  (Undisp. Fact II.D.5.)  In June 2001, Dallman placed Plaintiff on a Performance Improvement Plan ("PIP"), identified several deficiencies in his progress with the Blockhouse Studies, and warned him that he

could be terminated if the studies were not properly completed.  (Undisp. Fact II.D.6.) Plaintiff completed three drafts but each draft had significant errors.  (Undisp. Fact II.D.9.)  Eventually, Plaintiff was terminated for failure to complete the Blockhouse Studies.  (Undisp. Facts II.D.9-12.)

Plaintiff has a different view.  He does not dispute that the Blockhouse Studies he completed had errors and inaccuracies.  (Undisp. Fact II.D.9.) However, Plaintiff alleges that, in essence, he was deliberately set up to fail in order to terminate him because of his national origin and prior EEO complaints.  To support this theory, Plaintiff offers the following explanation.

The Blockhouse Studies were complex studies that would require a week or two of training, perhaps more, before someone with a bachelor's degree could complete them.  (Pltf. Ex. 23, Mills Dep. Tr. at 7-8.)  Alternatively, Plaintiff should have been provided assistance from someone with a Ph.D. who could help him.  (Pltf. Ex. 6, Stroud Dep. at 37.) Instead of training, Plaintiff was expected to teach himself how to do the study from a complex manual that was six-to-seven inches thick.  (Pltf. Ex. 27, Dallman OCI Fact-Finding Tr., at 68.)   Other employees had been previously tasked to do the studies, but their work was not provided to Plaintiff.  (Gallegos, MSPB Tr., Vol. II, at 23.)  When Plaintiff requested assistance from his supervisors, he was told to look it up in the manual. (Pltf. Ex. 27, Dallman OCI Fact-Finding Tr., at 68.)

Meanwhile, Plaintiff alleges, other engineers supervised by Dallman were being treated very differently with regard to how much accuracy was expected in their reports, how many drafts they could submit, how professional they were expected to behave and how flexible their working conditions were.

3

By way of example, other engineers who submitted reports late and with errors were never disciplined.  (Pltf. Ex. 5, Pham Tr. at 28-30, 36-38.) Some engineers submitted three or more drafts of a study to Dallman without being disciplined, let alone terminated as Plaintiff was. (Pltf. Ex. 8, Dallman Dep. Tr. at 106.)  While Plaintiff was suspended for discourtesy for an allegedly rude tone of voice (Undisp. Fact II.B.7; Undisp. Fact II.C.7), another engineer angrily told a fellow co-worker "f– you," (Pltf. Ex. 19, Pham Dep. Tr. at 19) while another engineer told his supervisor, "You will f– yourself" but neither received even a letter of reprimand, much less a suspension. (Pltf. Ex. 27, Horst Dep. Tr. at 149; Pltf. Ex. 8, Dallman Dep. Tr. at 10-12.) Plaintiff was strictly limited to thirty minutes for lunch, other engineers took sixty to ninety minutes.  (Pltf. Ex. 2, Gallegos Aff. at 2.)  More was required of Plaintiff to take sick leave or annual leave.  (Pltf. Ex. 2, Gallegos Aff at 2; Pltf. Ex. 10, Nunez Dep. at 15.)  Plaintiff alleges that this disparate treatment was due to his national origin.

Plaintiff further points to personnel actions that he alleges were retaliatory due to his EEO activity. His first allegation rests on notes taken by Dallman shortly after Plaintiff's first EEO Complaint was filed in December 1995.  (Response at 20; Pltf. Ex. 20, Dallman Notes.) The notes, dated March 15, 1996, describe Dallman's plan to withhold a within grade pay increase or suspend Plaintiff for a future possible infraction; Dallman was counseled to wait for a longer time after Plaintiff's EEO complaint.  (Id.) The second retaliation allegation relates to an EEO complaint filed on October 4, 1999. (Pltf. Ex. 17, EEO Activity.)  Shortly thereafter, on November 15, 1999, Dallman proposed a seven day suspension allegedly for discourteous conduct at a meeting on November 10, 1999. (Dfdt. Ex. 1, Decision on Proposed Suspension; Ex. 3, Memo for Proposed Suspension.)  The third allegation relates to an amended EEO complaint

4

filed April 3, 2001. (Pltf. Ex. 17, EEO Activity.)  This was followed by Dallman's proposal, on

May 23, 2001, to suspend Plaintiff for ten days. (Undisp. Fact II.C.7.)  The fourth allegation

relates to an EEO complaint filed August 1, 2001, alleging that the PIP Plaintiff was placed on

was unwarranted.  This was followed by Dallman's proposal to terminate Plaintiff for

unsatisfactory performance on December 12, 2001. (Pltf. Ex. 17. EEO Activity; Dfdt. Ex. 4Q.)

Plaintiff alleges that these unfavorable employment actions closely followed his protected EEO

activity and are retaliatory.

## II.  STANDARD OF REVIEW

A federal employee bringing a "mixed" case combining unfavorable personnel action and

allegations of discrimination is entitled to have the facts subject to trial de novo.  5 U.S.C. §

7703(c); Hayes v. U.S. Gov't Printing Office, 684 F.2d 137, 141 (D.C. Cir. 1982). "De novo

review" means a review unfettered by prejudice from a prior agency decision and free of any claim

that the agency decision is supported by substantial evidence.  Timmons v. White, 314 F.3d 1229,

1233 (10th Cir. 2003)(holding that federal employees bringing suit under 42 U.S.C. § 2000e-16

are entitled to a review without being limited to the findings or record of the prior administrative

determination)(citing Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 23 (1974)).

Defendant seeks summary judgment on two counts, Count II--National Origin

Discrimination and Count III–Retaliation.[1] Summary judgment is appropriate if there is no

genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d

---

[1]Plaintiff's Complaint is misnumbered and contains two "Count II"s. Correctly numbered, the count for
retaliation would be Count III and the Court will refer to it as such.

1522, 1527 (10th Cir. 1995).  The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  There is a genuine issue for trial if a rational fact-finder could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. Matsushita, 475 U.S. at 587.  To avoid summary judgment, the nonmoving party must show, at a minimum, an inference of the existence of each essential element of the case. Hulsey v. K-Mart, Inc., 43 F.3d 555, 557 (10th Cir. 1994).

## III.  DISCUSSION

Threshold Issues

Before the Court can proceed to the resolution of the Motion for Summary Judgment on Counts II and III, two preliminary matters must be addressed--first, the impact of the Court's previous decision in this case (Doc. Nos. 48 & 49) and second, the application of the 2003 Supreme Court decision in Desert Palace v. Costa on the analysis of Plaintiff's claims for discriminatory termination and retaliation. 539 U.S. 90 (2003).

*The Impact of the Court's Prior Decision Upholding the Merit Systems Protection Board*

Plaintiff has argued that he is entitled to de novo review. (Response at 2.) Countering that argument, Defendant relies on this Court's prior decision (Doc. Nos. 48 & 49, "Opinion") upholding Plaintiff's termination. (See, e.g., Dfdt. Reply at 9, 10 and 13.)

A federal employee bringing a mixed case of discrimination has the right to have the facts subject to trial de novo.  5 U.S.C. § 7703(c).  This Court's prior review of the MSPB decision was constrained by the substantial evidence standard of review applicable at that stage. Hayes,

684 F.2d at 141.  In a review under that standard, a court may not consider contradictory references in the record.  N.L.R.B. v. Central Machine & Tool Co., 429 F.2d 1127, 1129 (10th Cir. 1970).  Plaintiff is entitled to consideration of his discrimination claims without being prejudiced by the preceding administrative proceeding.[2]  Timmons, 314 F.3d at 1233.

Defendant is mistaken to assume that, because certain facts in the MSPB decision were supported by substantial evidence, they have been conclusively determined. This court's search of the previous administrative record for substantial evidence cannot substitute for a de novo review of the facts, as required by 5 U.S.C. § 7703(c).  In particular, whether Plaintiff received meaningful assistance or whether the Blockhouse studies were within the abilities of a GS-12 engineer (Reply at 10) are not settled as a result of this Court's previous decision.

However, this does not apply to conclusions of law.  See 5 U.S.C. § 7703(c) (giving employees the right to have facts determined by trial de novo). This Court's previous conclusions of law include that it was lawful for the agency to supplement inadequate performance standards with a more specific Performance Improvement Plan (PIP) (Opinion at 9).  That conclusion of law will apply going forward and Plaintiff is precluded from arguing that the Army failed to follow its own policies and procedures in terminating Plaintiff. (Response at 20).

*The Application of Desert Palace to Plaintiff's Claims*

In 2003, the Supreme Court issued Desert Palace v. Costa, a Title VII mixed motives case (where legitimate reasons as well as discriminatory reasons account for an unfavorable employment decision). 539 U.S. 90.  Desert Palace concluded that the Civil Rights Act of 1991

---

[2]Timmons dealt with 5 U.S.C. § 2000e-16 while Plaintiff's case appears to be under 5 U.S.C. §§ 7702 & 7703.  However, a mixed case brought under §§ 7702 and 7703 "shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16(c).") 5 U.S.C. § 7703(b)(2). Hence, Timmons, is directly on point.

had partly abrogated Price Waterhouse. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); 539 U.S. at 98-102.  The Supreme Court first discussed the "mixed-motive" case, in Price Waterhouse.  Barbara Lindemann & Paul Grossman, Employment Discrimination Law Vol I 40 (3d ed. 1996). Price Waterhouse, a plurality opinion, had been interpreted by most courts to require that plaintiffs raising a mixed motive claim must show direct evidence of discrimination. Desert Palace, 539 U.S. at 95. In Desert Palace, the Supreme Court held that Title VII requires no particular form of evidence; a plaintiff may prove a mixed motives case by a preponderance of either direct or circumstantial evidence. 539 U.S. 90.

Plaintiff argues that Desert Palace has transfigured the analysis of Title VII claims by doing away with the burden shifting approach in McDonnell Douglas for mixed-motive cases. (Response at 3.)  Under this theory, to survive summary judgment, Plaintiff must merely show some evidence that a protected characteristic played a "motivating factor" in the employer's decision. (Id. at 4.)  Defendant disagrees, arguing that Desert Palace applied to mixed motive jury instructions and is inapplicable at the summary judgment stage. (Reply at 4.)

Superficially, Plaintiff's argument has appeal.  The McDonnell Douglas framework follows a three part analysis. 411 U.S. 792 (1973). The plaintiff establishes a prima facie case of discrimination, the defendant offers a legitimate explanation for its action, and then the plaintiff attempts to show that the defendant's defense is merely a pretext for unlawful discrimination.. It is illogical to argue that a decision is a mere pretext for discrimination while simultaneously conceding that the defendant had legitimate, as well as illegitimate motives.  In fact, pretext and mixed motives claims have been considered mutually exclusive. See Price Waterhouse, 490 U.S. at 247, n. 12.

Both the courts and legal commentators are divided on the impact of <u>Desert Palace</u>.[3] The Fifth Circuit has slightly modified the third prong of the <u>McDonnell Douglas</u> framework providing that a plaintiff may either show that (1) the defendant's reason is not true, but is instead a pretext for discrimination (the pretext alternative) or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (the mixed-motive alternative). <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305, 312 (2004). Other courts have also adopted this approach. <u>See Carey v. Fedex Ground Package Sys., Inc.</u>, 321 F.Supp.2d 902, 916 (S.D. Ohio 2004).

In contrast, the Eighth Circuit has concluded that the <u>Desert Palace</u> decision has "no impact"at the summary judgment stage. <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 736 (8th Cir. 2004). The Eighth Circuit reasoned that the issue at summary judgment is whether plaintiff has sufficient evidence that unlawful discrimination was <u>a</u> motivating factor--if so, the presence of additional legitimate motives will not entitle the defendant to summary judgment. <u>Id.</u> at 735. The court noted that the relative weight of different motivations was a trial issue and could not be resolved at summary judgment. <u>Id.</u>  Directly addressing the juxtaposition of <u>Desert Palace</u> and <u>McDonnell Douglas</u>, the court explained that plaintiffs have never been universally required to rely upon <u>McDonnell Douglas</u>. <u>Id.</u> at 736.  Instead, if a plaintiff had strong enough evidence to

<hr/>

[3]<u>See, e.g.</u>, Jeffrey A. Van Detta, <u>"Le Roi Est Mort; Vive Le Roi!" An Essay on the Quiet Demise of McDonnell Douglas and the Transformation of Every Title VII Case after Desert Palace v. Costa into a Mixed Motives Case</u>, 52 Drake L. Rev. 71 (2003); William R. Corbett, <u>McDonnell Douglas, 1973-2003: May You Rest in Peace?</u>, 6 U. Pa. J. Lab. & Emp. L. 199, 213-16 (2003)(suggesting that, as a result of <u>Desert Palace</u>, the <u>McDonnell Douglas</u> framework is dead); John F. Buckley & Michael R. Lindsay, <u>Ch. 3, Title VII of the Civil Rights Act of 1964, II. Disparate Treatment</u> in Defense of Equal Employment Claims (questioning whether <u>McDonnell Douglas</u> has any continuing vitality); <u>Dare v. Wal-Mart Stores, Inc.</u>, 267 F.Supp.2d 987, 990-992 (D. Minn. 2003)(arguing that the <u>McDonnell Douglas</u> framework is a legal fiction that should not be perpetuated); but see, <u>Dunbar v. Pepsi-Cola General Bottlers of Iowa, Inc.</u>, 285 F.Supp.2d 1180, 1198 (N.D. Iowa 2003); <u>Brown v. Westaff (USA), Inc.</u>,..301 F.Supp.2d 1011, 1016-17 (D. Minn. 2004).

support a finding by a reasonable fact finder that illegal discrimination played a part in the

employer's decision, McDonnell Douglas was not required to get the case to a jury.  Id.  But if

the plaintiff lacked evidence that clearly pointed to an illegal motive, the plaintiff could only

survive summary judgment by revealing an inference of discrimination through the McDonnell

Douglas framework.  Id.

      The Ninth Circuit, whose en banc opinion was upheld in Costa v. Desert Palace, Inc., 299

F.3d 838 (9th Cir. 2002), avoided the question by analyzing the plaintiff's case under both mixed

motives as well as pretext. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1068-72 (9th Cir.

2003).

      While the Tenth Circuit has not directly addressed this issue, even before Desert Palace, it

did not require a plaintiff to use McDonnell Douglas to analyze circumstantial evidence and did

not require direct evidence for mixed motives cases.  Medlock v. Ortho Biotech, Inc., 164 F.3d

545, 550 (10th Cir. 1999); cf. Wells v. Colorado Dep't of Transp., 325 F.3d 1205, 1223 (10th

Cir. 2003)(Hartz, J., concurrence)(McDonnell Douglas allows circumstantial evidence on

motive).  To prevail without benefit of the inference of discrimination from McDonnell Douglas, a

plaintiff must introduce direct or circumstantial evidence that the alleged motive "actually relates

to the question of discrimination in the employment decision at issue, not to the mere existence of

other, potentially unrelated forms of discrimination in the workplace."  Medlock, 164 F.3d at 550.

A plaintiff that could not meet one of the elements of the McDonnell Douglas prima facie case

was still entitled to a jury determination of a discrimination claim if he could show that

discrimination was a determining factor in his discharge.  Greene v. Safeway Stores, Inc., 98 F.3d

554, 559 (10th Cir. 1996).

In sum, the Court finds that reports of the death of <u>McDonnell Douglas</u> are likely premature. <u>Herawi v. State of Alabama, Dep't of Forensic Sci.</u>, 311 F.Supp.2d 1335, 1345 (M.D. Ala. 2004).[4]  In the present case, there is no strong (direct or circumstantial) evidence that racial discrimination motivated the Army's decision to terminate Plaintiff.  There are no negative racial remarks and no facially discriminatory policy, and no strong circumstantial evidence that alone would be sufficient to persuade a fact finder that racial discrimination accounted for Plaintiff's treatment. This case is unlike other mixed motive cases where courts have omitted the <u>McDonnell Douglas</u> framework.  <u>See, e.g.</u>, <u>Medlock v. Ortho Biotech, Inc.</u>, 164 F.3d at 548 (10th Cir. 1999)(defendant relied upon "issues raised in your [Title VII] deposition" to terminate the plaintiff); and <u>Greene v. Safeway Stores, Inc.</u>, 98 F.3d at 560 (eight executives over 50 were replaced by younger employees in a short period).   Without raising an inference of discrimination through the <u>McDonnell Douglas</u> framework, Plaintiff's case would not survive summary judgment.  Hence, the Court will analyze Plaintiff's case under the <u>McDonnell Douglas</u> framework, 411 U.S. 792 (1973) and <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981) with the modification to the third prong as adopted in <u>Rachid</u>, 376 F.3d at 312.

<u>Termination</u>

It is unlawful to discharge a federal employee based on national origin.  42 U.S.C. § 2000e-16(a) & (c); 5 U.S.C. § 7703(b)(2). "An unlawful employment practice is established when the complaining party demonstrates that ...national origin was a motivating factor for any

---

[4]Indeed, the Supreme Court itself has applied the <u>McDonnell Douglas</u> analysis without comment in an ADEA claim subsequent to <u>Desert Palace</u>. <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44 (2003).

employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).[5]

Under <u>McDonnell Douglas</u>, Plaintiff must first establish a prima facie case by proving (1) he belongs to a protected class, (2) he was qualified for his position, (3) despite his qualifications he was terminated, and (4) the job was not eliminated. <u>Perry v. Woodward</u>, 199 F.3d 1126, 1140 (10th Cir. 1999).[6] Proving a prima facie case should not be an onerous burden.  <u>Ortiz v. Norton</u>, 254 F.3d 889, 894 (10th Cir. 2001).  Of particular relevance here, a plaintiff can show that he is qualified by merely showing that he held the position for a long period of time, entitling him to an inference of satisfactory performance.  <u>English v. Colorado Dep't of Corrections</u>, 248 F.3d 1002, 1008 (10th Cir. 2001). Discharge for reasons other than workplace reduction creates a presumption that the job was not eliminated.  <u>Id.</u>  In contrast, defendant's proffered reasons for the discharge are not to be considered as part of the prima facie case because to do so would deprive the plaintiff of an opportunity to prove pretext.  <u>MacDonald v. Eastern Wyoming Mental Health Ctr.</u>, 941 F.2d 1115, 1119 (10th Cir. 1991).

---

[5]Generally, federal employees are covered by 42 U.S.C. § 2000e-16 and only private employees are covered by the earlier sections in Subchapter VI. (<u>See, e.g.</u>, 42 U.S.C. 2000e(b) defining the term employer not to include the United States; and <u>Conkle v. Potter</u>, 352 F.3d 1333, 1335-36 (10th Cir. 2003)(distinguishing 42 U.S.C. § 2000e-16 as applicable to federal employees and § 2000e-5(f) as applicable to private employees, not federal employees)).  In the 1991Civil Rights Act, Congress defined "complaining party" used in § 2000e-2(m) to include anyone who can bring a proceeding under Subchapter VI.  42 U.S.C. § 2000e-16, which covers federal employees, is part of Subchapter VI, so federal employees would be included in this definition of complaining party. Neither party has argued that 42 U.S.C. § 2000e-2(m) does not apply to federal employees so the Court will assume that it does.

[6]Plaintiff has claimed that a different prima facie case applies: (1) he was a member of a protected group, (2) he was subject to an adverse employment action, and (3) similarly situated employees were treated differently. (Plaintiff's Response at 7.)  <u>Mitchell v. Henderson</u>, 202 F.3d 282 (10th Cir. 2000)(unpublished opinion) (<u>citing</u> <u>Trujillo v. Univ. of Colorado Health Sci. Ctr.</u>, 157 F.3d 1211, 1215 (10th Cir. 1998)).  However, the Tenth Circuit has since limited the test in <u>Trujillo</u> to cases of discriminatory suspension, not discriminatory discharge, as here. <u>Hysten v. Burlington Northern & Santa Fe Ry. Co.</u>, 296 F.3d 1177, 1181 (10th Cir. 2002).

In this case, Plaintiff has established a prima facie case. It is undisputed that Plaintiff is a member of a protected class (Undisp. Fact # 1), and that he was discharged (Undisp. Fact at 12).[7] Defendant disputes whether Plaintiff was qualified, suggesting that he was terminated for incompetence, hence he cannot be qualified. (Memorandum in Support of Motion for Summary Judgment, "Mem." Doc. 44 at 16.) But this argument is improper because it conflates the prima facie case with Defendant's articulation of a legitimate non-discriminatory reason for the termination and deprives Plaintiff of an opportunity to prove pretext. MacDonald, 941 F.2d at 1119.

The parties do not dispute that Plaintiff was a longstanding employee. (Undisp. Fact #3.) That is sufficient to show that he was qualified. English, 248 F.3d at 1008. Moreover, Plaintiff has submitted admissible evidence that he was a successful and fully satisfactory employee until Mr. Dallman became his supervisor. (See, e.g., Pltf. Ex. 2, Gallegos Aff.; Ex. 3, Gallegos Performance Appraisals; id., Hays Letter (noting professional competence, dedication and teamwork); Cooper Letter (noting excellent support, outstanding job and significant contributions).) This evidence is sufficient, for summary judgment purposes, to create a genuine issue of material fact as to whether Plaintiff was qualified. Ortiz, 254 F.3d at 894.

Having concluded that Plaintiff was qualified, it remains only to determine whether his job was eliminated. Perry, 199 F.3d at 1140. Defendant has asserted that Plaintiff cannot prove his job was not eliminated. (Mem. at 16.) However, Plaintiff has provided an affidavit from Raul

---

[7]Plaintiff has disputed the reasons why he was terminated that are set out in Undisp. Fact # 12 but has not disputed that he was terminated. (Pltf. Disp. Fact #33.)

Grajeda who has heard Mr. Dallman state[8] that Plaintiff's position remains open. (Pltf. Ex. 7, Grajeda Aff.)  Moreover, under <u>English</u>, the fact that Plaintiff was discharged and there was no workforce reduction is enough to satisfy this prong of the prima facie case.[9] 248 F.3d at 1008.

  Plaintiff having established a prima facie case, the burden of production then shifts to Defendant to articulate a legitimate non-discriminatory reason for Plaintiff's termination. <u>Kendrick v. Penske Transp. Services, Inc.</u>, 220 F.3d 1220, 1226 (10th Cir.). Defendant has done so here, alleging that Plaintiff was terminated for unsatisfactory performance.  (Mem. at 16; Ag. Ex. 4B.)

  The burden now shifts back to Plaintiff for an opportunity to prove that Defendant's proffered reason is (1) pretextual, <u>Kendrick</u>, 220 F.3d at 1226, or (2) the product of mixed motives, <u>Rachid</u>, 376 F.3d at 312. Pretext may be proven by showing that (1) the reason is false, (2) Defendant has acted contrary to a written policy, or (3) Plaintiff was treated differently than other employees. <u>Kendrick</u>, 220 F.3d at 1230.  If a plaintiff relies upon different treatment to prove pretext, he must also show that he is similarly situated to the employees whose treatment is at issue. <u>Id.</u> at 1232. A plaintiff is similarly situated if he deals with the same supervisor and is subject to the same standards of performance evaluation and discipline.  <u>Id.</u>

  *Pretext--Is Defendant's Reason False*?

---

  [8]Mr. Grajeda's report of Mr. Dallman's statement would be admissible as an admission under Fed. R. Evid. 801(d)(2)(D). <u>Abuan v. Level 3 Communications, Inc.</u>, 353 F.3d 1158, 1171 (10th Cir. 2003); <u>Armbruster v. Unisys Corp.</u>, 32 F.3d 768, 779 (3d Cir. 1994).

  [9]Plaintiff has also asserted that Mr. Dallman stated in a deposition that the "group has not changed." However, Plaintiff cites to page 8 of Mr. Dallman's deposition which is not found in Ex. 8 to which Plaintiff cites. Unsupported, conclusory and self-serving statements are insufficient to create a genuine issue of material fact. <u>Salguero v. City of Clovis</u>, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004).

Here Plaintiff implicitly argues that the proffered reason is false--his performance was satisfactory but the Blockhouse studies he was assigned were beyond the abilities of a GS-12 engineer. (Response at 13.) To support this allegation, Plaintiff offers the following evidence. Instead of training, Plaintiff was expected to teach himself how to do the study from a complex manual that was six-to-seven inches thick. (Pltf. Ex. 27, Dallman OCI Fact-Finding Tr. at 68.) When Plaintiff requested assistance from his supervisors, it was denied and he was told to look it up in the manual. (Id.) A scientist testified that a person like Plaintiff with only a bachelors degree would need about two weeks of training to properly use the manual. (Pltf. Ex. 23, Mills Dep. Tr. at 7-9.) Another engineer testified that Plaintiff should have had a Ph.D. assisting him with the Blockhouse studies. (Pltf. Ex. 6, Stroud Dep. at 37.) Plaintiff testified that other employees had been previously tasked to do the Blockhouse studies, but their work was not provided to Plaintiff. (Gallegos, MSPB Tr. Vol. II at 23).

Defendant counters by relying on this Court's prior review of the MSPB's decision, where this Court found that the MSPB's conclusion that the studies were within the abilities of a GS-12 engineer was supported by substantial evidence. (Dfdt. Reply at 10.) However, as explained above, this Court's prior review under the substantial evidence standard is not conclusive for fact finding under a de novo review. Timmons, 314 F.3d at 1233; 5 U.S.C. § 7703(c).[10] Defendant asserts that assistance was available and "...all he had to do was ask." (Reply at 10.) But Plaintiff did ask. He told Dallman that the calculations were beyond his abilities and that Dallman should

---

[10] Furthermore, the MSPB's decision included evidence that, after Plaintiff submitted his third unsatisfactory draft, Dallman tasked another GS-12 engineer with the studies and that engineer completed them in a timely fashion. Defendant has not argued that point at summary judgment and has omitted any mention of those facts in its Statement of Undisputed Facts. In any event, at summary judgment, the Court would be compelled to view the conflicting testimony in the light most favorable to Plaintiff.

get someone who had a Ph.D. to do the studies. (Pltf. Ex. 27, OCI Transcript.) This is enough

evidence to create a genuine issue of material fact whether Plaintiff was terminated not for

unsatisfactory performance but for some other reason such as discrimination, i.e., Defendant's

reason could be a pretext.

*Pretext--Was Plaintiff Treated Differently?*

Plaintiff has also argued that he was held to a different performance standard than others.

To support this allegation, Plaintiff offers the following argument.  Another engineer supervised

by Dallman, Dung Pham, said that he was counseled by Dallman for producing work with too

many errors, for forgetfulness, or not meeting deadlines, too many times to remember. (Pltf. Ex.

5, Dung Pham Dep. at 35).  He never received a "Needs Improvement" on his evaluation. (Id. at

29.)

Plaintiff's supervisor gave contradictory testimony.  At one point he said that other

engineers' reports contained "similar" problems as Plaintiff's reports, but that they would require

only one draft and the document would go out after only one review.  (Pltf. Ex. 8, Dallman Dep.

Tr. at 104.) Later Dallman testified that the corrections required for Plaintiff's reports were

"immense."  (Id. at 105.)  He also conceded that there were times when other engineers required

more than three drafts to produce an acceptable report (id. at 106) yet Dallman never gave any

other engineer a Notice of Unsatisfactory Performance, never placed anyone on a Performance

Improvement Plan, or terminated anyone.  (Id. at 10-11; Pltf. Ex. 8, Dallman Dep. Tr. at 105-06.)

This evidence is sufficient to create a genuine issue of material fact whether Plaintiff was treated

differently that other similarly situated engineers.

16

Plaintiff has offered enough evidence to show pretext either by evidence that Defendant's reason is false or by evidence that he was treated differently.  Kendrick, 220 F.3d at 1230. He has compared himself to other engineers who committed similar infractions and reported to the same supervisor. Id. at 1232. Under the McDonnell Douglas analysis, Plaintiff has offered enough evidence of pretext to survive summary judgment.

*Mixed Motive*

In order to prevail with a mixed-motive case, Plaintiff must ultimately prove that it is more likely than not that race played some part in the employment decision.  Price Waterhouse, 490 U.S. at 246, n. 12.  Plaintiff may seek to prove that with either direct or circumstantial evidence. Desert Palace v. Costa, 539 U.S. 90, 101 (2003). Here, there is no direct evidence of discrimination.  There is evidence of different treatment. Plaintiff has successfully raised an inference in his prima facie case that the different treatment may be related to his national origin. This is sufficient to create a genuine issue of material fact whether discrimination was one of Defendant's motivations.

The Court will deny Defendant's  motion for summary judgment on Count II, Discrimination based on National Origin. Sufficient evidence to disbelieve a defendant's proffered reason is sufficient to survive summary judgment. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). Nothing more is required at this point.  Id.

Retaliation

A retaliation claim can proceed, even if the underlying claim of discrimination is decided against the plaintiff.  Pastran v. K-Mart Corp., 210 F.3d 1201, 1205 n. 4, (10th Cir. 2000); Sanchez, 164 F.3d 527, 533 (10th Cir. 1998). A prima facie case of retaliation consists of (1) a

plaintiff who has engaged in protected activity, (2) an adverse employment action taken against

him, and (3) a causal connection between the protected activity and the adverse action.  Annett v.

Univ. of Kansas, 371 F.3d 1233, 1237 (10th Cir. 2004).  For the purposes of a prima facie case, a

causal connection can be established if protected activity is followed in close temporal proximity

by an adverse employment action. Id. at 1239-40 (citing Bullington v. United Air Lines, Inc., 186

F.3d 1301, 1320 (10th Cir. 1999)).

The Tenth Circuit liberally defines an "adverse employment action." Heno v. Sprint/United

Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2000). To be actionable under Title VII, retaliation

must amount to an alteration of Plaintiff's "compensation, terms, conditions, or privileges of

employment" or adversely affect his status as an employee. Sanchez, 164 F.3d at 533.

With regard to causation, the closer the adverse employment action occurs after the

protected activity, the stronger the inference of causation.  Anderson v. Coors Brewing Co., 181

F.3d 1171, 1179 (10th Cir. 1999).  One and a half months may be close enough by itself to show

causation.  Id. Three months, without any other evidence of causation, is insufficient.  Richmond

v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to

articulate a legitimate, non-discriminatory reason for its employment decision.  If the defendant

satisfies that burden, the plaintiff may still prevail if he can show that the defendant's reason is

pretextual, or the product of mixed motives.  Jeffries v. State of Kansas, 147 F.3d 1220, 1231

(10th Cir. 1998); Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1072 (9th Cir.

2004)(applying Desert Palace to a retaliation claim).

Plaintiff alleges four acts were retaliatory.  First, Plaintiff submits Dallman's notes taken March 15, 1996 as evidence that he was planning to suspend Plaintiff for an infraction he had not yet committed. (Pltf. Ex. 20, Dallman Notes).  These notes were taken shortly after Plaintiff's first EEO Activity at the end of December 1995.  Second, Dallman requested Plaintiff's suspension for seven days on November 15, 1999 for conduct in a meeting on November 10, 1999, just five weeks after he filed a complaint on October 4, 1999.  (Pltf. Ex. 17, EEO Activity; Dfdt. Ex. 1, Decision on Proposed Suspension; Ex. 3, Memo for Proposed Suspension).  Third, Plaintiff was suspended for ten days for an incident that occurred on May 23, 2001, seven weeks after he amended an EEO complaint. (Pltf. Ex. 17, EEO Activity; Undisp. Fact II.C.7.) Fourth, Dallman proposed Plaintiff's termination on December 12, 2001, just eleven days after Plaintiff filed an EEO complaint. (Pltf. Ex. 17, EEO Activity; Dfdt. Ex. 4Q.)

There is no dispute that Plaintiff engaged in protected activity.  (Memorandum at 17.) Defendant disputes the causal connection between Plaintiff's EEO activity and the adverse employment actions he experienced.

 1) *Dallman's Notes*

The notes, while disturbing, do not amount to an alteration of compensation, terms, conditions or privileges of employment and do not adversely affect Plaintiff's status as an employee.  Sanchez, 164 F.3d at 533. The notes may serve as background evidence of an intent to retaliate but, by themselves they do not amount to an adverse employment action and are not actionable as retaliation. Id.

 2) *The Suspensions*

19

This Court has already dismissed the claims relating to Plaintiff's suspensions for lack of jurisdiction.[11] (Doc. 60.) While Plaintiff may not recover for these claims, they may serve as background evidence of an intent to retaliate. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 102 (2002)(providing that claims over which a court lacks jurisdiction may still serve as background evidence.)

  *3) Termination*

Termination is obviously an adverse employment action. Sanchez, 164 F.3d at 533. Defendant concedes that there was a temporal connection between Plaintiff's EEO activity and his termination.  (Reply at 12.)  Defendant has articulated a legitimate, non-discriminatory reason for the termination.  Id. Plaintiff may still prevail if he can show this reason to be pretextual or the product of mixed motives.

As analyzed earlier, Plaintiff has offered evidence that Defendant's reason for terminating him was false and that other employees were treated less severely for similar conduct.  With the close temporal connection between Plaintiff's EEO activity and the termination, a reasonable fact finder who believes Plaintiff's evidence, might conclude that the fact that he was terminated rather than assisted to complete the studies was retaliatory, particularly when combined with background evidence of Dallman's notes and the suspensions. The Court will deny Defendant's Motion for Summary Judgment on Count III, Retaliation.

## IV.  CONCLUSION

---

[11]The Court has given Plaintiff until December 14th to provide legal authority that would support the Court's jurisdiction over these claims.  The dismissal over the suspension claims is subject to reconsideration if Plaintiff provides satisfactory jurisdictional authority.

Plaintiff has established a prima facie case that discrimination on the basis of national origin may have played a part in his termination.  Although Defendant has articulated a legitimate reason for the termination, Plaintiff has offered sufficient evidence to create a genuine issue of material fact as to whether that reason was a pretext, whether his national origin played some part in his treatment, and whether his treatment was retaliatory.  As such, the Court will deny Defendant's motion on Count II, Discrimination on the Basis of National Origin and Count III, Retaliation.

## V.  ORDER

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 43) is hereby DENIED.

**DATED** at Albuquerque this $^{13th}$ day of December, 2004.

_____
BRUCE D. BLACK
United States District Judge

Attorneys:

For Plaintiff:

    Roy R. Brandys
    Childress & Zdeb, Ltd.
    515 N. State St., Suite 2200
    Chicago, IL  60610

For Defendants:

    Michael H. Hoses
    Assistant U.S. Attorney
    P.O. Box 607
    Albuquerque, NM  87103