IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

BOBBY D. GALLEGOS,

       Plaintiff,

v.                                          No. CIV-O3-384 BB/KBM

LES BROWNLEE,
ACTING SECRETARY
OF THE ARMY

       Defendant.


## MEMORANDUM OPINION AND ORDER

This matter comes before the Court for re-consideration of the Court's dismissal of Plaintiff's suspension claims due to lack of jurisdiction.[1] Because the Court doubted its jurisdiction with regard to claims arising from disciplinary suspensions, the Court issued an Order (Doc. 60) provisionally dismissing those claims unless Plaintiff provided authority for the Court's jurisdiction. Plaintiff has responded that this court has jurisdiction under 42 U.S.C. § 2000e-16, and that he has raised the suspensions before the EEOC and has asked this Court to reconsider its decision to dismiss the suspension claims. (Doc. 65.) The Court finds that Plaintiff's request for reconsideration is well-taken and will be GRANTED.

With regard to the seven day suspension, the Court finds that Plaintiff has failed to establish a prima facie case because the facts do not raise an inference of discrimination. Defendant's Motion for Summary Judgment as to the seven day suspension will be GRANTED.

---

[1] In the Initial Pre-Trial Report, the parties stipulated that the court's jurisdiction arose under 5 U.S.C. § 7702(a)(1)(A). (Doc. 15.) In response to this Court's proposed dismissal of the suspension claims for lack of jurisdiction under § 7702, Plaintiff has conceded that § 7702 does not provide jurisdiction for the suspension claims.

With regard to the ten day suspension, the Court finds that Plaintiff has established a prima facie case and has offered evidence suggesting that Defendant's legitimate explanation may be pretextual. Defendant's Motion for Summary Judgment on the claims for the ten day suspension will be DENIED.

## **I. JURISDICTION**

The Court has re-examined the cases in which courts have held that the judicial review scheme provided under the Civil Service Reform Act (CSRA) is a plaintiff's exclusive remedy for disciplinary actions. Several courts have stated in dicta that short suspensions are not entitled to judicial review.[2] As sweeping as this dicta is, none of these were Title VII cases;[3] thus, they are not controlling here. In regard to prohibited personnel practices such as discrimination, the CSRA provides, "This section shall not be construed to extinguish or lessen any...right or remedy available to any employee under section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-

---

[2]See Bush v. Lucas, 462 U.S. 367, 385 n. 28 (1983) (there are no provisions for appeal of suspensions of 14 days or less); Schweiker v. Chiliky, 487 U.S. 412, 423 (1988) (citing Bush for the proposition that there is "no remedy whatsoever" for short suspensions); Pinar v. Dole, 747 F.2d 899, 910 (D.C. Cir. 1984) (minor personnel actions "infected by particularly heinous motivations" must be brought to the Office of Special Counsel with only limited judicial review of the Counsel's decision); Carducci v. Regan, 714 F.2d 171, 175 (D.C. Cir. 1983) (same). "The CSRA deprives the district court of jurisdiction to consider prohibited personnel practices." Hubbard v. EPA, 809 F.2d 1, 5 (D.C. Cir. 1986); see definition of prohibited personnel practices to include violations of 42 U.S.C. § 2000e-16 in 5 U.S.C. §§ 2302(a)(1) and (b). "[T]he detailed administrative framework established by the Act convinces us...that Congress intended the remedies provided by the CSRA to be the exclusive means to remedy violations of the Act's substantive provisions." Schrachta v. Curtis, 752 F.2d 1257, 1260 (7th Cir. 1985). "[T]he comprehensive remedial nature of the [CSRA] indicates congressional intent to preclude judicial review except as provided for in the statute itself." Veit v. Heckler, 746 F.2d 508, 509 (9th Cir. 1984).

[3]There is a Tenth Circuit case that addressed a short suspension in the Title VII context, Harms v. IRS, 321 F.3d 1001 (10th Cir. 2003). However, that case did not squarely address the jurisdiction question. It is clear from the underlying district court opinion that the defendant did not question whether there was jurisdiction over the suspension claims per se but merely raised the fact that the plaintiff had not exhausted administrative remedies. Harms v. IRS, 146 F.Supp.2d 1128 (D. Kan. 2001). The district court assumed, without deciding, that suspension claims could be brought in district court. Id. at 1136. That court then dismissed the claims because plaintiff had not timely exhausted his administrative remedies and equitable tolling was not justified. Id. The Tenth Circuit did not address the underlying jurisdiction question but merely upheld the lower court's finding that equitable tolling was not justified. 321 F.3d at 1006.

16). 5 U.S.C. § 2302(d). Second, the legislative history of the CSRA suggests that Congress did not intend to limit relief for discrimination to actions that could be appealed to the MSPB. S. Rep. 95-969 at 53, reprinted in 1978 U.S.C.C.A.N. 2723, 2775 ("In the case of discrimination complaints not otherwise appealable to the [MSPB] the [EEOC] will have full responsibility for deciding the matter); H.R. Conf. Rep. 95-1717 at 141, reprinted in 1978 U.S.C.C.A.N. 2860, 2874 ("The conference substitute fully protects the existing rights of employees to trial de novo under Title VII of the Civil Rights Act of 1964 after a final agency action on the matter.")

There is a long history of legislation granting overlapping or parallel remedies for discrimination. Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974). In view of the statutory language preserving remedies under § 2000e-16 and the CSRA legislative history, the Court concludes that the CSRA is not the exclusive remedy for disciplinary actions where the plaintiff alleges discrimination. In such cases, the Court also has jurisdiction under 42 U.S.C. § 2000e-16.

However, in order to invoke the Court's jurisdiction, Plaintiff must have exhausted his administrative remedies. In Title VII, Congress provided a careful blend of administrative and judicial enforcement powers to protect federal employees from discrimination. Brown v. Gen. Serv. Admin., 425 U.S. 820, 833 (1976); 42 U.S.C. § 2000e-16. To exhaust administrative remedies, the employee must request informal counseling followed by a formal complaint.

The employee must request counseling within 45 days of the date on which the alleged discrimination occurs. 29 C.F.R. § 1614.105(a)(1). This requirement is virtually absolute. Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993). Within thirty days of that request, the agency must notify the employee that if he wishes to file a formal complaint, he must do so within fifteen

3

days, i.e., the formal complaint must be filed within 45 days of the informal complaint. However, there are provisions for lengthening this latter period. 29 C.F.R. § 1614.105(d). Failure to exhaust administrative remedies is jurisdictional; however, failure to *timely* exhaust is in the nature of a statute of limitations and is subject to waiver. See Harms v. IRS, 321 F.3d 1001, 1006-09 (10th Cir. 2003).

There are two suspensions requiring exhaustion. The seven day suspension began on May 1, 2000. (Doc. 44, Memo. in Support of Motion for Summary Judgment, Ex. 1.) On May 15, 2000, Plaintiff requested counseling, well within the first 45 day limit. (Doc. 52, App. to Resp., Ex. 17.) Plaintiff filed a formal complaint with EEOC on August 3, 2000, more than the 45 days after his initial contact that is permitted by 29 C.F.R. § 1614.105(d). (Id.) However, the United States has not complained about timely exhaustion of administrative remedies.

The remaining suspension began on July 23, 2001 and lasted ten days. (Doc. 44, Memo. in Support of Motion for Summary Judgment, Ex. 2.) On August 23, 2001, Plaintiff requested counseling, again well within the first 45 day limit. (Doc. 52, App. to Resp., Ex. 17.) Plaintiff filed a formal complaint with EEOC on December 4, 2001. (Id.) Again, this is beyond the 45 days permitted by 29 C.F.R. § 1614.105(d) but the United States has not complained. The Court will conclude that Plaintiff has exhausted his administrative remedies and the Court has jurisdiction over them.

## II. BACKGROUND

The first suspension occurred as a result of Plaintiff's alleged conduct at a meeting with eleven other people on Nov. 10, 1999. (Undisp. Fact # 1, n.2.)[4] Dallman, Plaintiff's supervisor, asked him whether certain vehicles were being fitted with Class III or IV trailer hitch receivers. (Undisp. Fact #2.) Plaintiff's response was something to the effect of, "You have the paperwork" or "the paperwork is in your box and "what are your thoughts" or "What do you think, Jeff?" (Undisp. Fact # 4.) At this point, Plaintiff's and Defendant's stories diverge.

Defendant alleges that Plaintiff refused to answer his question, that he kept repeating his answer, speaking louder each time; Dallman ultimately concluded that Plaintiff was discourteous for refusing to answer his question. (Disp. Facts # 5 and 6.) Plaintiff explains his behavior by saying that the meeting was concluding, people were talking and he thought Dallman could not hear him. (Disp. Fact #14.) The only evidence offered by Plaintiff to support this alternate version of events is Plaintiff's own affidavit and deposition. (Doc. 59, Pltf.'s Surreply at 5, Stmt. # 14.)

After the meeting, the ten other employees provided statements about what occurred to Dallman. (Disp. Fact #15.) One employee's statement did not mention anything negative. (Doc. 45, Dfdt.'s App., Ex. 5, Weatherwax Memo.) The rest described Plaintiff's behavior in negative terms such as "rude," "insubordinate," and "belligerent."[5] Plaintiff explains these memos by alleging that some of these employees felt pressured to give their statements and that they did not

---

[4]The facts described here are from either (1) Doc. 44, Memorandum in Support of Motion for Summary Judgment, or (2) Doc. 59, Pltf.'s Surreply.

[5](Doc. 45, Dfdt.'s App., Ex. 5, Trujillo Memo ("left the meeting prematurely"); Castillo Memo ("rudely answered"); Lopez Memo ("created a disruption"); Cedillos Memo ("rude and loud", "lack of respect for his co-workers and his supervisor"); Estes Memo ("refused" [to answer] and asked "do I have to read it to you"); Tessier Memo ("belligerent and insubordinate"); Horst Memo ("uncooperative and clearly unwilling to provide answers to questions").

agree with what they wrote. Again, the only evidence offered by Plaintiff to support this alternate explanation is Plaintiff's own affidavit and deposition. (Doc. 59, Pltf.'s Surreply at 5, Stmts. # 15-16.) Plaintiff received a seven day suspension for this incident.[6] (Undisp. Fact # 9)

The second suspension occurred as a result of an incident between Plaintiff and an employee relations specialist, Scott Zambardi. (Undisp. Fact #1.) Plaintiff went to Zambardi's office to pick up copies of documents supporting the withholding of a within grade step increase. (Undisp. Fact #2.) Upon reviewing the copies, Plaintiff concluded that he was not sure he had all of the documents and told Zambardi he wished to review the original file. (Undisp. Fact #3.) When Plaintiff returned the file, Zambardi reviewed it and concluded that some documents were missing. (Id.) Zambardi requested the copies then in Plaintiff's possession and both men proceeded to the copy machine so that Zambardi could make a copy. (Id.) Again, at this point, Plaintiff's and Defendant's stories diverge.[7]

In Defendant's version of events, Plaintiff asked Zambardi several times in an aggressive tone of voice, "Who is your supervisor?" (Disp. Fact #5.) While Zambardi was making copies, he discovered the missing original documents in Plaintiff's possession. (Id.) Plaintiff then accused Zambardi of not giving him the file, but in fact, Plaintiff eventually realized that he had two copies of the disputed document. (Disp. Fact #6.)

---

[6] This was Plaintiff's third infraction and the penalty was in the middle of the range of acceptable penalties for a third offense. (Doc. 45, Dfdt.'s App., Ex. 6.)

[7] In Plaintiff's Surreply setting out which of Defendant's facts are in dispute, Plaintiff disputes Defendant's Facts # 4, 5 and 6 with regard to the ten day suspension. (Doc. 59, Pltf.'s Surreply at 5, Stmts. # 15-16.) There is no Fact #4 in Defendant's list of facts for the ten day suspension; it skips from Fact 3 to Fact 5. (Doc. 44, Memo. in Support of Motion for Summary Judgment at 4-5.) Since Plaintiff has stated that he does not dispute Facts 1, 2, 3, 7, 8, and 9, the Court will assume that Plaintiff only disputes Facts 5 and 6.

According to Plaintiff's version of events, when he realized that he did not have all of the desired documents, he went back and asked Zambardi for the ones he was missing. (Pltf. Disp. Fact # 23.) In Plaintiff's view, Zambardi accused Plaintiff of doing something with the documents and he was rude and abrasive to Plaintiff. (Id.) Plaintiff complains that his supervisor Dallman never even interviewed him about the incident but did interview Zambardi. (Pltf. Disp. Fact # 25.) Plaintiff supports this account with a transcript in which his supervisor, Dallman, concedes that he never asked Plaintiff for his version of events before proposing him for suspension. (Doc. 52, Pltf. App. to Resp., Ex. 27 at 94.) In addition, Dallman denied that there were other witnesses to the alleged incident, but then conceded that there was a witness, but explained that the witness had nothing of substance to say. (Id.) Plaintiff offers a sworn statement by this witness, James Kielty, in which he says that Plaintiff's voice was not rude, abrasive, nasty or obnoxious and that both Plaintiff and Zambardi were speaking with the same level of voice. (Doc. 52, Pltf. App. to Resp., Ex. 21.)

### III. DISCUSSION

Summary judgment is appropriate if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). There is a genuine issue for trial if a rational fact-finder could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When viewing the evidence, the Court must draw reasonable inferences in favor of the nonmoving party. Matsushita, 475 U.S. at

7

587. Depositions or affidavits based on hearsay, or on self-serving statements lacking factual support, are insufficient to raise a genuine issue of material fact to withstand summary judgment. Aramburu v. Boeing Co., 112 F.3d 1398, 1405 (10th Cir. 1997); Hall v. Bellmon, 935 F.2d 1106, 111 (10th Cir. 1991).

Discriminatory suspensions are analyzed under the familiar McDonnell Douglas framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Hysten v. Burlington Northern & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002). To establish a prima facie case of discriminatory suspension, a plaintiff must demonstrate, (1) he was a member of a protected group, (2) he was subject to an adverse employment action, and (3) the suspension occurred under circumstances giving rise to an inference of discrimination. Hysten, 296 F.3d at 1181. If the plaintiff establishes a prima facie case, the defendant must offer a legitimate, non-discriminatory reason for the plaintiff's treatment. McDonnell Douglas, 411 U.S. at 802. The plaintiff then has the burden of demonstrating that the defendant's explanation is a pretext for unlawful discrimination, id. at 804, or that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (the mixed-motive alternative). Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).[8]

Here, there is no dispute that Plaintiff is a member of a protected class. (Undisp. Fact #1) A suspension is an adverse employment action. Hysten, 296 F.3d at 1192. The problem is

---

[8] The Court discussed mixed motive analysis at the summary judgment stage in its previous opinion in this case. (Doc. 63 at 7-11.)

whether Plaintiff has satisfactorily shown that the different treatment accorded other employees raises an inference of discrimination.

An inference of discrimination is ordinarily demonstrated by showing that similarly situated employees were treated differently, Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000), but "courts must be sensitive to the myriad of ways such an inference can be created." Hysten, 296 F.3d at 1181 (citing Equal Employment Opportunity Comm'n v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990). If a plaintiff offers similarly situated employees to satisfy this element, their different treatment for similar conduct must fairly raise an inference of discrimination. Hysten, 296 F.3d at 1181; Nwagbologu v. Regents of Univ. of New Mexico, 33 Fed. Appx. 449, 452 (10th Cir. 2002) (unpublished decision). Both the conduct and the comparison employee must be similar to the plaintiff's situation, otherwise, their disparate treatment could have a discriminatory or nondiscriminatory explanation and their treatment will not raise the necessary inference of discrimination to establish a prima facie case. Thus, the incidents to which Plaintiff's treatment is compared must not involve differentiating or mitigating circumstances that would distinguish them from the plaintiff's conduct. Wooten v. Dep't of Treasury, 149 F.3d 1192 (10th Cir. 1998) (unpublished decision) (citing Perkins v. Brigham and Women's Hospital, 78 F.3d 747, 751 (1st Cir. 1996).

Employees are similarly situated when they violate work rules of comparable seriousness, deal with the same supervisor, and are subject to the same standards of performance and discipline. Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997). The past work history of the plaintiff and the proposed comparison employee is also relevant. Id. To survive

summary judgment, the plaintiff must offer evidence as to how each employee is similarly situated; a court cannot simply assume similarities. Id.

In order to be a similarly situated employee here, an employee would have to be supervised by Dallman, Plaintiff's supervisor, and have behaved discourteously or done something else arguably comparable for which the employee is subject to the same standards of performance and discipline. Aramburu, 112 F.3d at 1404. To be fairly comparable, the comparison employee must have a similar work history. Id. Importantly, here that includes the fact that these suspensions were Plaintiff's third and fourth incidents of discipline. (Doc. 45, Dfdt. App. Ex. 1 & 8.)

Only two of the incidents that Plaintiff offers for comparison were incidents of discourtesy. The others were (1) violations of the photo policy, (2) safety violations, (3) misrepresentation of educational background on a resume, (4) requests for sick and annual leave, (5) length of lunch breaks, and (6) overtime. (Doc. 50, Resp. at 10-11.) Plaintiff has failed to establish that this other conduct is subject to the same standards of performance and discipline with regard to these disparate examples. Rivera v. City and County of Denver, 365 F.3d 912, 924 (10th Cir. 2004). Hence, only the incidents of discourtesy are suitable for comparison. Aramburu, 112 F.3d at 1404.

Seven Day Suspension

The first comparison Plaintiff draws is to an incident between two co-workers, Dung Pham and Tom Estes. They had a verbal altercation and Pham was subjected to abusive language by Estes, but neither employee was recommended for discipline. (Doc. 50, Resp. at 9; Doc. 52, App. to Resp., Ex. 5, Dep. of Dung Pham at 18.) This situation is not similar to Plaintiff's

10

because the alleged discourtesy occurred between co-workers, rather than between a supervisor and his subordinate. See Watts v. City of Norman, 270 F.3d 1288, 1295 (10th Cir. 2001); Rivera, 365 F.3d at 924 (citing Williams v. Penske Transp. Services, Inc., 46 F.Supp.2d 1135, 1142 (D. Kan. 1999).) An employer could reasonably place more emphasis on courtesy to one's supervisor than courtesy between co-workers in making decisions about discipline. Kendrick v. Penske Transp. Services, Inc., 1220, 1223 (10th Cir. 2000); Williams, 46 F.Supp.2d at 1142. Such differences would not raise an inference of discrimination.

There are two other important differences. First, Pham and Estes conciliated. (Doc. 52, App. to Resp., Ex. 5, Dep. of Dung Pham at 18.) In contrast, Plaintiff has denied he was discourteous and justified his conduct by saying he thought his supervisor could not hear. (Doc. 50, Resp. at 8.) A lack of conciliatory behavior can explain disparate treatment and destroy an inference of discrimination. Kendrick, 220 F.3d at 1233.

Second, Pham did not tell Dallman about the full extent of the discourtesy he experienced. (Doc. 52, App. to Resp., Ex. 5, Dep. of Dung Pham at 20.) If a supervisor does not know the extent of the disciplinary problem, he can hardly be expected to apply the same level of discipline. Jones v. Denver Post Corp., 203 F.3d 748, 756 (10th Cir. 2000). Thus, the dispute between Pham and Estes is not similar to the one between Plaintiff and his supervisor; the fact that neither Pham nor Estes were disciplined does not raise an inference of discrimination.[9]

---

[9] The Defendant has also argued that Estes is not similarly situated because he has a different supervisor. (Doc. 56, Dfdt's Reply at 7.) However, Defendant has cited to the MSPB Transcript, Vol. I, p. 40 for support and that information is not found there. As a result, the Court has not relied upon this alleged difference between Estes and Plaintiff.

Plaintiff offers a second incident of discourtesy. Mark Horst was discourteous to his second line supervisor, Andrus Garay, by allegedly telling him, "You will f--- yourself." (Doc. 52, Pltf. App. Ex. 27 at 149.) Apparently, this was Horst's second offense. (Doc. 45, Dfdt. Ex. 4 at 52.) According to the agency's Table of Penalties, Horst should have been suspended for at least one day. ((Id. at Ex. 6.) Yet he was not disciplined. (Doc. 52, Pltf. App. Ex 27 at 154.) Horst is a Caucasian male. (Doc. 52, Pltf. App. Ex. 29.)

Defendant has alleged that Horst is not similar because he was not supervised by Dallman. (Doc. 56, Reply at 7.) However, Defendant has not provided any evidence to substantiate this assertion. Based on the record, Dallman apparently does Horst's performance reviews (Doc. 52, Pltf. App. Ex. 27 at 149), assigns work to him (id. at 150), and Dallman instructed him to "watch [his] language" in response to the incident with Garay (id. at 149). There is therefore sufficient evidence in the record to conclude that Dallman has some supervisory authority to Horst.

While there are some similarities between Plaintiff and Horst then, there is also an important difference. Unlike Plaintiff, he apologized for his discourtesy and when Dallman spoke to him later about the incident, he immediately apologized again. This is dissimilar to Plaintiff who has yet to admit that he was discourteous, let alone apologize for it. Failure to apologize can explain disparate treatment and destroy any inference of discrimination. Kendrick, 220 F.3d at 1233.

Thus, neither the incident between Pham and Estes, nor the one between Horst and Garay are similar enough, standing alone, to raise an inference of discrimination. Plaintiff has offered no other similarly situated employees and has offered no other information to raise an inference of

discrimination with regard to the seven day suspension. (Doc. 59, Surreply at 6-7.) Plaintiff has failed to establish a prima facie case.

Even if the Court were to conclude that Plaintiff did establish a prima facie case, Defendant has explained Plaintiff's treatment by articulating a legitimate reason for Plaintiff's treatment, to wit, his discourtesy "pales in comparison" to the other employees' incidents. (Doc. 56, Reply at 8.) In response, Plaintiff has denied that he was discourteous and explained his rising tone of voice by stating that he thought his supervisor could not hear him.[10] The only evidence that Dallman might not have heard him is Plaintiff's affidavit and deposition and this is insufficient to raise a genuine issue of material fact to withstand summary judgment. Hall v. Bellmon, 935 F.2d 1106, 111 (10th Cir. 1991) (conclusory, self-serving affidavits are insufficient to resist summary judgment). None of the ten employees who wrote memos describing the meeting had any difficulty hearing the altercation; they reported it in detail. (Doc. 44, Memorandum in Support of Summary Judgment, Ex. 5.) Moreover, it is not the employee's perception of his behavior that is important, it is the employer's. Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988).

Finally, to counter his fellow employees' memos, Plaintiff alleges in his deposition and affidavit that some of the employees felt pressured to write them. (Doc. 52, App. to Resp., Ex. 2 ¶ 7; Ex. 19 at 67-68.) Plaintiff's statements about what others told him are hearsay and are insufficient to demonstrate a genuine issue of material fact to oppose summary judgment. Starr v.

---

[10]Defendant has asserted that Gallegos did not raise this explanation (he thought Dallman couldn't hear) in his response memorandum to the official who decided on the seven day suspension and Defendant has cited to Exhibit 11 for support. (Doc. 56, Reply at 12). However, Exhibit 11 is a deposition from Dung Pham, not the response memorandum Defendant has mentioned, so the Court has disregarded this point.

Pearle Vision, 54 F.3d 1548, 1555 (10th Cir. 1995) (Rule 56 precludes hearsay). Thus, Plaintiff fails to establish a prima facie case of discrimination and even if he did, he has not offered sufficient evidence of pretext to withstand summary judgment.   Defendant's Motion for Summary Judgment on the seven day suspension claim will be granted.

Ten Day Suspension

To establish a prima facie case, Plaintiff offers the same two employees for comparison as he did for the seven day suspension, but because they are not sufficiently similar, their disparate treatment alone does not raise an inference of discrimination.  Plaintiff also offers a third employee, Diaz, who was allegedly rude to Zambardi.  (Doc. 50, Resp. at 9.) However, Plaintiff offers no information to establish that Diaz is similarly situated such as whether he reported to the same supervisor, so the Court will not consider this employee's alleged discourtesy. Aramburu, 112 F.3d at 1405.

However, Plaintiff is not limited to establishing a prima facie case via similarly situated employees, Hysten, 296 F.3d at 1181, and here Plaintiff offers other unexplained conduct that suggests bias against Plaintiff. First, Dallman proposed the ten day suspension without asking Plaintiff for his version of events. (Doc.52, Pltf. App., Ex. 27 at 94-97.)  Second, Dallman denied that there were any other witnesses to the incident (id.) although there was a witness, James Kielty. (Doc.52, Pltf. App., Ex. 21.) Third, when confronted with the existence of the witness, Dallman denied that Kielty had anything of substance to say; in fact, the Kielty Declaration directly refutes some aspects of the encounter by saying that Plaintiff was not rude. (Doc. 52, Pltf. App., Ex. 21.)  The cumulative weight of this conduct suggests that his supervisor may not have suspended Plaintiff for his conduct but for something else.

14

Previously, the Court concluded that the disparate treatment of Horst was insufficient, <u>standing alone</u>, to raise an inference of discrimination. However, establishing a prima facie case should not be an onerous burden. <u>EEOC v. Horizon/CMS Healthcare Corp.</u>, 220 F.3d 1184, 1197 (10th Cir. 2000). This additional biased treatment and evasive responses about the witness combined with the disparate treatment of Horst raises an inference of discrimination with regard to the ten day suspension.

The Defendant has offered a legitimate explanation, that Plaintiff was discourteous and that his discourtesy paled by comparison to other employees' conduct. (Doc. 56, Reply at 8.) However, the Kielty Declaration, (Doc. 52, Pltf. App. Ex. 21), raises a genuine issue of material fact whether Plaintiff was discourteous and, if he was, whether the alleged discourtesy truly pales by comparison to Horst's statement to his second line supervisor Garay, "You will f--- yourself." (Doc. 52, Pltf. App. Ex. 27 at 149.) This declaration could show that Defendant's explanation is false, i.e., pretextual, or it could show that Defendant exaggerated Plaintiff's misconduct, suggesting that discrimination may have played a role in his suspension.

Furthermore, Horst was discourteous to a supervisor and received no discipline, while Plaintiff's discourtesy was to a co-worker and received a ten day suspension. This difference seems too great even considering their different work history and the fact that Horst apologized. Along with the biased treatment, it suggests that Defendant's explanation is not credible or, alternatively, that discrimination may have played a part in Plaintiff's treatment. As a result, the Court will deny summary judgment with regard to the ten day suspension.

15

## IV. CONCLUSION

With regard to the seven day suspension, Plaintiff has failed to establish a prima facie case. Even if he had, Defendant has articulated a legitimate reason for Plaintiff's treatment which Plaintiff has failed to show is pretextual. Plaintiff has also failed to show that discrimination played any role in the seven day suspension. Defendant's Motion for Summary Judgment on the seven day suspension will be granted.

With regard to the ten day suspension, Plaintiff has established a prima facie case and Defendant has offered a legitimate reason for Plaintiff's treatment. However, Plaintiff has offered evidence that the reason may be pretextual or that discrimination may have played some role in Plaintiff's treatment. The Court will deny Defendant's Motion for Summary Judgment on the ten day suspension.

## V. ORDER

Defendant's Motion for Summary Judgment is GRANTED in regard to the seven day suspension but is DENIED in regard to the ten day suspension.

**DATED** at Albuquerque this 31st day of January, 2005.

                                                         BRUCE D. BLACK
                                                         United States District Judge

**Attorneys:**

For Plaintiff:
    Roy R. Brandys
    Childress & Zdeb, Ltd.
    515 N. State St., Suite 2200
    Chicago, IL  60610

For Defendants:
    Michael H. Hoses
    Assistant U.S. Attorney
    P.O. Box 607
    Albuquerque, NM  87103